1
2
3
4
5
6
7
8
9
10
11

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERICA HANNAH ELIZABETH ANDERSEN-SANCHEZ,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Case No. 1:20-cv-01782-BAK (EPG)<br><br>FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(ECF Nos. 1, 19). |

This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding her application for disability insurance benefits. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c) with any appeal to the Court of Appeals for the Ninth Circuit. (ECF No. 10).

Plaintiff presents the following issues:

1. Substantial Evidence does not support the ALJ's rejection of the only examining psychiatric physician's well-supported MRFC over the non-examining state agency physician's opinions.

1

2. The Physical RFC is not supported by Substantial Evidence.

3. The ALJ harmfully erred by failing to provide "clear and convincing" reasons for rejecting symptomology evidence.

(ECF No. 19, p. 6). Having reviewed the record, administrative transcript, the briefs of the parties, and the applicable law, the Court finds as follows:

## I.   ANALYSIS

### A.   Dr. Michiel's Opinion

#### 1.   Standards of review

Plaintiff argues that the ALJ erred by failing to give specific and legitimate reasons, supported by substantial evidence, for discounting the opinion of Dr. Michiel, a psychiatric consultative examiner, who prepared a report regarding Plaintiff's work limitations. (ECF No. 19, p. 19); (*see* A.R. 1113).

The parties agree that this claim is governed by the agency's "new" regulations concerning how ALJs must evaluate medical opinions for claims filed on or after March 27, 2017.[1] 20 C.F.R. §§ 404.1520c, 416.920c; (ECF No. 19, p. 17; ECF No. 22, pp. 4-5). The regulations set "supportability" and "consistency" as "the most important factors" when determining the opinions' persuasiveness. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). And although the regulations eliminate the "physician hierarchy," deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." 20 C.F.R. §§ 404.1520c(a)-(b); 416.920c(a)-(b).

However, the parties disagree as to whether these new regulations displace prior case law that gave deference to certain medical opinions and that addressed the specificity by which an ALJ was required to articulate his or her reasoning. The case authority preceding the new regulations required an ALJ to provide clear and convincing or specific and legitimate reasons for rejecting certain medical opinions. *See Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (alteration in original) (internal citations omitted)) ("To reject [the] uncontradicted

---

[1] Plaintiff applied for disability benefits on March 25, 2019. (A.R. 21).

2

opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence. If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence."); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983) ("If the ALJ wishes to disregard the opinion of the treating physician, he or she must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record."). Plaintiff argues that these standards still govern; Defendant argues that they have been displaced. (*See* ECF No. 19, p. 19; ECF No. 22, p. 5).

Since the conclusion of briefing in this matter, the Ninth Circuit has decided the issue:

> The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant. *See* 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . ., including those from your medical sources."). Our requirement that ALJs provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions, *see Murray*, 722 F.2d at 501–02, is likewise incompatible with the revised regulations. Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources—contrary to the revised regulations.

*Woods v. Kijakazi*, No. 21-35458, 2022 WL 1195334, at *6 (9th Cir. Apr. 22, 2022). Accordingly, under the new regulations, "the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id.* at *1. "Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.*

In conjunction with this requirement, "[t]he agency must 'articulate . . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, 20 C.F.R. § 404.1520c(b), and 'explain how [it] considered the supportability and consistency factors' in reaching these findings, *id.* § 404.1520c(b)(2)." *Woods*, 2022 WL 1195334, at *6.

> Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant . . . objective medical evidence." *Id.* § 404.1520c(c)(1). Consistency means the extent to which a medical opinion is

3

"consistent . . . with the evidence from other medical sources and nonmedical sources in the claim." *Id.* § 404.1520c(c)(2).

*Id.*[2]

Accordingly, the Court will review Plaintiff's first issue under the above standards.

### 2. Analysis

Turning to the merits, the ALJ concluded that Dr. Michiel's opinion was unpersuasive for the following reasons:

> The opinions of the consultative examiner, Ekram Michiel, MD, were unpersuasive. The claimant attended the consultative examination in July of 2019 (Ex. B5F). Dr. Michiel gave the claimant a GAF rating of 48 (Ex. B5F/4). And he opined that the claimant was unable to maintain attention and concentration to carry out simple job instructions (Ex. B5F/5). However, pursuant to 20 CFR 416.920b(c), the undersigned does not provide articulation about the evidence that is inherently neither valuable, nor persuasive. This includes the GAF rating opined by Dr. Michiel. And the opinion that the claimant was unable to maintain attention and concentration to carry out simple job instructions was inconsistent with the record as a whole.
>
> The medical evidence of record supports that the claimant has a learning disability. However, there was no evidence that she sought any assistance from a job coach, or a vocational rehabilitation specialist. In fact, her treatment notes were essentially devoid of complaints regarding her limitations related to her learning disability, or evidence that she sought treatment for her symptoms. The only meaningful records concerning the claimant's mental/intellectual functioning during the period in question came at the consultative examination (Ex. B5F). At that time, the claimant complained of feeling sad that she could not do things that other people could (Ex. B5F3-4). However, it bears mentioning that her PHQ-2/PHQ-9 scores were consistently zero (Ex. B3F/8, B7F/21, 32, 37, 42, 52, and 61). And again, the claimant did not appear to otherwise complain of symptoms or limitations regarding her learning disability to any of her treatment providers, or

---

[2] As the Ninth Circuit also noted, "The revised regulations recognize that a medical source's relationship with the claimant is still relevant when assessing the persuasiveness of the source's opinion. *See id.* § 404.1520c(c)(3). Thus, an ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records. *Id.* § 404.1520c(c)(3)(i)–(v). However, the ALJ no longer needs to make specific findings regarding these relationship factors." *Woods*, 2022 WL 1195334, at *6 (citing § 404.1520c(b)(2)). "A discussion of relationship factors may be appropriate when 'two or more medical opinions . . . about the same issue are . . . equally well-supported . . . and consistent with the record . . . but are not exactly the same.' *Id.* § 404.1520c(b)(3). In that case, the ALJ 'will articulate how [the agency] considered the other most persuasive factors.'" *Id.* Here, there is no argument that Dr. Michiel's opinion was found to be equally well-supported and consistent with the record as another but not exactly the same. Accordingly, the relationship factors are not at issue.

> seek to address her limitations with any sort of treatment, job coaching, or vocational assistance/rehabilitation during the period in question.
>
> It is also important to note that despite the opinion of Dr. Michiel that the claimant was unable to maintain attention and concentration to carry out simple job instructions, the claimant testified at the hearing that she was the primary caregiver to three young children, ages nine, five, and almost two (Testimony at 2:15:45). Furthermore, she explained that last school year she was homeschooling her eldest child (Testimony at 2:20:20). She testified that the school year had just resumed shortly before the hearing, and her two eldest children were enrolled in school in their local school district; however, classes so far had been virtual (Testimony at 2:30:11). The claimant's ability to manage her children's schooling/education, and to care for three young children is inconsistent with the opinion that the claimant was unable to maintain attention and concentration to carry out simple job instructions.
>
> Finally, it bears mentioning that the claimant's presentation at the consultative examination was inconsistent with her presentation in her treatment notes. Dr. Michiel noted that the claimant was a very poor historian, and she stared fixedly off into space (Ex. B5F/2). Furthermore, Dr. Michiel noted that he was reliant on the claimant's mother to provide collateral information (*Id*.). However, the claimant's presentation at the consultative examination was inconsistent with her treatment notes, which routinely indicated that she was active and alert, she had good judgment, she was oriented times three, and she had normal behavior and thought content (Ex. B3F/3, 9, B4F/5, and B7F/62). Overall, the opinions of Dr. Michiel were unpersuasive.

(A.R. 34-35).

The first reason given to find Dr. Michiel's opinion unpersuasive is that it was unsupported by the record; specifically, there was no evidence that Plaintiff "sought any assistance from a job coach, or a vocational rehabilitation specialist" and "her treatment notes were essentially devoid of complaints regarding her limitations related to her learning disability, or evidence that she sought treatment for her symptoms." This reasoning invokes the supportability factor, which considers the relevant objective medical evidence and supporting explanations for a medical source opinion.

The ALJ accurately noted that the record failed to show that Plaintiff sought to address her alleged limitations by obtaining assistance with job development. While Plaintiff points to her placement in an "Adult Transition Program" in high school that taught some job skills, such as resume writing, Plaintiff's participation in this program occurred before March 25, 2019, the alleged onset of Plaintiff's disability. (ECF No. 19, p. 20). Accordingly, even if participation in

1  this program was comparable to seeking the "assistance from a job coach, or a vocational
2  rehabilitation specialist," it is not materially relevant because it does not show that Plaintiff
3  sought job-development assistance during the alleged disability period.[3] (A.R. 192, 432, 455); *see*
4  *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) ("Medical opinions
5  that predate the alleged onset of disability are of limited relevance.").

6      The ALJ also correctly observed that Plaintiff's medical records are devoid of complaints
7  regarding her limitations related to her learning disability, nor is there evidence that she sought
8  treatment for her symptoms. (*See* AR 896-1182 (noting treatment for things like asthma (A.R.
9  913), pregnancy (A.R. 961), and low back pain (A.R. 1114)). Plaintiff offers nothing to contradict
10 this assessment but generally argues that the ALJ should have done more. Specifically, the ALJ
11 should have identified the types of complaints that would be expected to be reflected in the
12 record, should have been aware that persons with mental complaints underreport symptoms, and
13 should have developed the record and obtained a consultative exam to further measure Plaintiff's
14 intellectual functioning impairment.[4] (ECF No. 19, p. 24).

15     Although Plaintiff points to additional analysis the ALJ could have done, the Court finds
16 that it was reasonable for the ALJ to point out, as one basis to deem Dr. Michiel's opinion
17 unpersuasive, that Plaintiff's medical records do not reflect complaints or treatment for her
18 learning disability. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (upholding ALJ's
19 decision to not fully credit a doctor's statement where there were normal findings and
20 conservative treatment, and "not the sort of description [of observations] and recommendations
21 [for treatment] one would expect to accompany a finding that [the claimant] was totally disabled
22 under the Act").

23     Moreover, this commonsense observation is not undercut by Plaintiff's assertion—that it

---

[3] Plaintiff also cites hearing testimony indicating that she might have sought relevant services from "Central Valley Regional Services." (ECF No. 19, p. 21) (citing A.R. 54). However, the record is unclear whether this entity providing job coaching, whether Plaintiff participated, and, if so, whether her participation was within the alleged disability period.

[4] Plaintiff also briefly argues that her limitations were well documented from sources other than her medical records, such as her education records and reports of family members. However, the education records, as noted above, fall outside the alleged disability period. And Plaintiff offers no developed argument as to how her family members' reports of her limitations render the ALJ's opinion erroneous.

1  is wrong to criticize her for not seeking treatment for mental health impairments—given that
2  Plaintiff herself offers no evidence that her mental limitations prevented her from seeking such
3  treatment.[5] *See Baker v. Berryhill*, 720 F. App'x 352, 357 (9th Cir. 2017) (unpublished)
4  ("Although it is possible a claimant's mental health could impede her ability to seek treatment,
5  where, as here, there is no evidence lack of treatment was attributable to mental impairment, an
6  ALJ may rely on lack of treatment to discount claimant testimony."). Nor was the ALJ required to
7  further probe into what Plaintiff's intellectual functioning impairments might have been as the
8  duty to develop the record is triggered where the evidence is ambiguous or the record is
9  inadequate to evaluate the evidence, not where there is an absence of evidence to support
10 disability. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (noting that duty to
11 develop the record is triggered where there is "[a]mbiguous evidence" or where the ALJ finds
12 "that the record is inadequate to allow for proper evaluation of the evidence").

13 The next reason given to find Dr. Michiel's opinion unpersuasive is that it was
14 inconsistent with Plaintiff's testimony and the treatment notes. This reasoning invokes the
15 consistency factor, which considers whether a medical opinion is consistent with other evidence
16 from medical and nonmedical sources. The ALJ supported this assessment with specific examples
17 from the record. For example, the ALJ contrasted Dr. Michiel's conclusion, that Plaintiff was
18 unable to maintain attention and concentration to carry out simple job instructions, with
19 Plaintiff's testimony, that she cared for three young children, which included helping to manage
20 their education. (A.R. 53-54, 60-61 (testimony concerning efforts to help with children's
21 education)). Additionally, as for Dr. Michiel's observation that Plaintiff stared fixedly off into
22 space at the consultative examination, the ALJ noted that treatment records showed that Plaintiff
23 was, among other things, active and alert. (A.R. 925, 931 (noting Plaintiff was "active and alert")
24 937 (noting that Plaintiff was "oriented to person, place, and time"). While Plaintiff argues that
25 her testimony reveals less functional ability than the ALJ suggests and points to other record
26 evidence that could support Dr. Michiel's opinion, such, at most, amounts to another rational

---

[5] It is worth noting that Plaintiff's asserted mental limitations did not prevent her from obtaining medical care for other issues, like her pregnancy.

interpretation of the evidence, which is not sufficient to conclude that the ALJ erred. *See Thomas*, 278 F.3d at 954 ("Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld.").

Accordingly, the Court concludes that the ALJ's decision to deem Dr. Michiel's opinion unpersuasive was supported by substantial evidence after consideration of the supportability and consistency factors.

### B. Physical RFC

Plaintiff next argues that the ALJ's physical RFC determination—that Plaintiff could perform light work and to avoid concentrated exposure to atmospheric conditions such as fumes, noxious odors, dust, mists, gases and poor ventilation—is not supported by substantial evidence. (ECF No. 19, p. 28); (A.R. 26).

A claimant's RFC is "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs"). In formulating the RFC, the ALJ considers medical and other source opinions and the record as a whole. *See, e.g., Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999) (holding that ALJ was "responsible for resolving conflicts" and "internal inconsistencies" within doctor's reports); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041-1042 (9th Cir. 2008) ("[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence."); *Smith v. Saul*, No. 1:18-CV-01614-GSA, 2020 WL 2611680, at *5 (E.D. Cal. May 22, 2020) (rejecting "the residual functional capacity determination for lack of compliance with applicable law and insufficient support from the record as a whole"). In reviewing findings of fact with respect to such determinations, this Court determines whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. § 405(g).

Here, the ALJ concluded as follows:

After careful consideration of the entire record, the undersigned finds that the

> claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she can perform simple routine, repetitive work. She can only understand, remember, and carry out rote and routine instructions or tasks that require the exercise of little independent judgment or decision-making and can be learned from a short demonstration. And she must avoid concentrated exposure to atmospheric conditions such as fumes, noxious odors, dusts, mists, gases, and poor ventilation.

(A.R. 26).

Plaintiff argues that, in determining Plaintiff's RFC, the ALJ improperly took it upon herself to interpret raw medical data. In support, Plaintiff cites the following portion of the decision:

> The opinions of the DDS medical consultants, L. Kiger, MD; and Cynthia Linardos, MD, were unpersuasive. In June of 2019, Dr. Kiger opined that the claimant had no exertional or postural limitations; however, she needed to avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation (Ex. B2A/11-12). Dr. Kiger noted that *there was no new and material evidence since the prior unfavorable decision*, and she therefore adopted the prior Administrative Law Judge decision (Ex. B2A/11-12). Subsequently, on reconsideration in September of 2019, Dr. Linardos gave the same opinions, she affirmed the earlier determination of Dr. Kiger, and she adopted the prior unfavorable Administrative Law Judge decision (Ex. B4A/10-11).
>
> *However, neither DDS medical consultant had the benefit of reviewing the complete record, hearing the claimant's testimony at the hearing, or of conducting an in-person examination of the claimant.* The opinion that the claimant had no exertional or postural limitations, but she had limitations concerning exposure to fumes, odors, dusts, gases, and poor ventilation was inconsistent with the record as a whole. Subsequent records, including Exhibits B6F-B7F supported that the claimant had significant obesity, and degenerative disc disease of the lumbar spine, warranting exertional limitations within the residual functional capacity. Furthermore, the medical evidence of record documenting the claimant's significant obesity, and her degenerative disc disease of the lumbar spine supported deviating from the prior unfavorable Administrative Law Judge decision, because it established new and material evidence of greater exertional limitations than found by the prior Administrative Law Judge. For all of these reasons, the opinions of the DDS medical consultants were unpersuasive.

(A.R. 33-34) (emphasis added).

Essentially, Plaintiff argues that this summary constitutes an acknowledgement that no doctor had reviewed the entire record to render an opinion on Plaintiff's physical limitations; thus, the ALJ's RFC assessment was improperly based off her lay interpretation of raw medical

evidence. Plaintiff asserts that the ALJ should have obtained an opinion from an examining physician to review the unexamined records and render an opinion regarding Plaintiff's resulting limitations.

An ALJ's RFC assessment is not required to be based solely on medical opinion. *See Mills v. Comm'r of Soc. Sec.*, No. 2:13-CV-0899-KJN, 2014 WL 4195012, at *4 n.8 (E.D. Cal. Aug. 22, 2014) ("[B]ecause it is the ALJ's responsibility to formulate an RFC that is based on the record *as a whole*, . . . the RFC need not exactly match the opinion or findings of any particular medical source."). Importantly, "[t]he nature of the ALJ's responsibility is to interpret the evidence of record, including medical evidence. Such a responsibility does not result in the ALJ committing legal error when he assesses an RFC that is consistent with the record."). *Mendoza v. Saul*, No. 1:18-CV-00925-SKO, 2019 WL 4189686, at *10 (E.D. Cal. Sept. 4, 2019) (internal citations omitted).

Here, in formulating the RFC, the ALJ properly looked to the statements, or lack thereof, from treatment providers. (A.R. 31 ("Concerning her asthma, the claimant specifically denied any treatment with pulmonologists, allergists, or other specialists for her asthma symptoms (Ex. B4E). Rather, she treated her asthma symptoms with medication therapy through her primary care provider (*Id.*). Furthermore, the claimant denied that her asthma symptoms prevented her performing any activities (Ex. B4E/2). Additionally, the claimant's primary care treatment notes consistently indicated that her asthma symptoms were well controlled with her medication regimen (Ex. B2F-B3F, and B7F).")); (*see also* A.R. 30 ("Rather, her treatment for her back pain consisted of primary care treatment, medication therapy, and chiropractic adjustment (Ex. B3F and B7F). Furthermore, the claimant was encouraged to engage in conservative treatment options including application of ice, and performance of home exercises (*Id.*).")).

Moreover, the ALJ concluded that the evidence supported "greater exertional limitations than found by the prior Administrative Law Judge." Accordingly, if the ALJ erred, it was to Plaintiff's favor. *Mills*, No. 2:13-CV-0899-KJN, 2014 WL 4195012, at *4 (E.D. Cal. Aug. 22, 2014) (noting that a "plaintiff [could] hardly fault the ALJ for giving him the benefit of the doubt and assessing an RFC that is more favorable to plaintiff than most of the medical opinions in the

record"). Lastly, Plaintiff has not shown that the evidence warranted even further exertional limitations than the ALJ assessed, and thus there is no basis to conclude that the disability determination would have changed. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 n.2 (9th Cir. 2009) (rejecting challenge to RFC determination where the claimant did "not detail what other physical limitations follow from the evidence of his knee and should injuries, besides the limitations already listed in the RFC").

### C. Credibility

Lastly, Plaintiff argues that the ALJ failed to provide clear and convincing reasons to reject her subjective complaints. (ECF No. 19, p. 29).

As to a plaintiff's subjective complaints, the Ninth Circuit has concluded as follows:

> Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *see also Cotton v. Bowen,* 799 F.2d 1403, 1407 (9th Cir. 1986) ("it is improper as a matter of law to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings"). Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be "clear and convincing." *Swenson v. Sullivan,* 876 F.2d 683, 687 (9th Cir. 1989). General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.

*Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1995), *as amended* (Apr. 9, 1996). Additionally, an ALJ's reasoning as to subjective testimony "must be supported by substantial evidence in the record as a whole." *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995).

As an initial matter, the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (A.R. 30). Accordingly, because there is no affirmative evidence showing that Plaintiff was malingering, the Court looks to the ALJ's decision for clear and convincing reasons, supported by substantial evidence, for not giving full weight to Plaintiff's symptom testimony.

The ALJ summarized Plaintiff's complaints and the reasons for discounting them as follows:

The undersigned first notes that the lack of opinion evidence from any of the claimant's medical providers indicating that she was disabled, or that she has greater limitations than those found in this decision was somewhat inconsistent with her statements concerning the intensity, persistence, or limiting effects of her symptoms. Given the claimant's allegations of totally disabling symptoms, one might expect to see some indication in the treatment records of restrictions placed on the claimant by her medical providers. Yet a review of the record in this case reveals no restrictions recommended by the claimant's medical providers. The consultative examiner did opine in July of 2019 that the claimant was unable to maintain attention and concentration to carry out simple job instructions (Ex. B5F/5). However, the opinions of the consultative examiner were based on a one-time examination of the claimant, and his observations of the claimant, and opinions were inconsistent with the claimant's presentation to her treatment providers, and with her history of being the primary caregiver to three small children, and managing the schooling for her older kids. Finally, none of the non-examining DDS consultants concluded that the claimant's impairments caused work-preclusive limitations. Overall, the lack of opinion evidence from any of the claimant's medical providers indicating that she was disabled, or that she has greater limitations than those found in this decision was somewhat inconsistent with her statements concerning the intensity, persistence, or limiting effects of her symptoms.

The claimant's treatment history for her several impairments was also somewhat inconsistent with her statements concerning the intensity persistence, and limiting effects of her symptoms. Despite the claimant's allegations of disabling symptoms associated with her several impairments since March of 2019, her treatment for her several impairments was consistently conservative throughout the period in question. The claimant did not require any inpatient or emergency room treatment during the period in question for acute back pain, or acute asthma related symptoms. Rather, her treatment for her back pain consisted of primary care treatment, medication therapy, and chiropractic adjustment (Ex. B3F and B7F). Furthermore, the claimant was encouraged to engage in conservative treatment options including application of ice, and performance of home exercises (*Id.*). There was indication that the claimant might benefit from injection therapy; therefore, she was referred to pain management for a consultation in July of 2020 (Ex. B7F/16). However, through the date of the hearing, the claimant had not yet had any pain management treatment (Testimony at 2:24:50). And there was no evidence that the claimant required any surgical intervention for her symptoms of back pain, or that she required the use of any stimulation devices, or that she required the use of any assistive devices for ambulation.

Concerning her asthma, the claimant specifically denied any treatment with pulmonologists, allergists, or other specialists for her asthma symptoms (Ex. B4E). Rather, she treated her asthma symptoms with medication therapy through her primary care provider (*Id.*). Furthermore, the claimant denied that her asthma symptoms prevented her performing any activities (Ex. B4E/2). Additionally, the claimant's primary care treatment notes consistently indicated that her asthma

symptoms were well controlled with her medication regimen (Ex. B2F-B3F, and B7F).

Finally, as it relates to her learning disability, there was no evidence that the claimant sought any assistance from a job coach, or a vocational rehabilitation specialist. In fact, her treatment notes were essentially devoid of complaints regarding her limitations related to her learning disability, or evidence that she sought treatment for her symptoms. The only meaningful records concerning the claimant's mental/intellectual functioning during the period in question came at the consultative examination (Ex. B5F). At that time, the claimant complained of feeling sad that she could not do things that other people could (Ex. B5F3-4). However, it bears mentioning that her PHQ-2/PHQ-9 scores were consistently zero (Ex. B3F/8, B7F/21, 32, 37, 42, 52, and 61). And again, the claimant did not appear to otherwise complain of symptoms or limitations regarding her learning disability to any of her treatment providers, or seek to address her limitations with any sort of treatment, job coaching, or vocational assistance/rehabilitation during the period in question. Overall, the claimant's treatment history for her several impairments was somewhat inconsistent with her statements concerning the intensity persistence, and limiting effects of her symptoms.

The objective findings and imaging results were also somewhat inconsistent with the claimant's statements concerning the intensity, persistence, and limiting effects of her symptoms. Despite the claimant's allegations of disabling symptoms associated with her several impairments since March of 2019, the imaging studies of her lumbar spine documented only mild degenerative changes of the lumbar spine (Ex. B6F/1). Furthermore, her physical examinations often documented either no musculoskeletal or neurological examination was performed corresponding with a particular appointment, or if they were performed, there were no notable musculoskeletal or neurological examination findings (Ex. B2F/4, 10, 15, B3F/3, 8-9, B4F/5, and 15). Recently, treatment notes from 2020 indicated that the claimant had increasing complaints of low back pain (Ex. B7F). However, even then, her physical examinations generally only documented tenderness of the PSIS and the SI joint, bilaterally; tenderness of the left paraspinal region and sciatic nerve; and she had pain with flexion, extension, lateral flexion, and rotation; and L5 was painful (Ex. B7F/11, and 27).

As it relates to her asthma, there was no evidence of any spirometry, or pulmonary function testing during the period in question. And the claimant's physical examinations generally documented normal respiratory exams (Ex. B2F/4, 10, 15, 22, B3F/3, 9, and B4F/5). Finally, as it relates to her learning disability, the claimant's treatment notes generally indicated normal examinations/mental status examinations during the period in question, and the claimant's PHQ- 2/PHQ-9 questionnaires consistently noted scores of zero (Ex. B2F-B4F, and B7F). Overall, the objective findings and imaging results were somewhat inconsistent with the claimant's statements concerning the intensity, persistence, and limiting effects of her symptoms.

> Finally, there was evidence of inconsistent statements noted throughout the record. The following are examples of some of the inconsistent statements noted throughout the record. The following are not intended as an exhaustive list of all inconsistent statements in the record.
>
> At the hearing, the claimant testified that she could only walk for approximately two minutes before needing to rest (Testimony at 2:25:45). However, this was inconsistent with the claimant's treatment notes, which did not document that she required any assistive devices to aide in ambulation. Furthermore, on review of systems in September of 2018, she specifically denied gait problems (Ex. B4F/14). And on examination in April of 2019, the claimant was specifically regarded as being healthy-appearing, and ambulating normally (Ex. B3F/8-9).
>
> Furthermore, the claimant testified at the hearing that if she were to go to the store, she could not verify if the cashier gave her correct change (Testimony at 2:18:12). However, the claimant and her grandmother both inconsistently indicated on the June of 2019 function report and third party function report that the claimant could shop in stores, pay bills, and count change (Ex. B5E/7 and B6E/4). Furthermore, the claimant's historic school records indicated in October of 2010, and April of 2011 that her math skills were at a sixth grade level (Ex. B13E/194, 210, and B1F/44).
>
> Finally, the claimant testified at the hearing that by the time she was 17 years old, her reading skills were at a third or fourth grade level, and she felt that they were still at that level (Testimony at 2:20:46). However, historic school records from October of 2010, and April of 2011 indicated that the claimant's reading level was around a high fourth, to low fifth grade level, and her writing skills were at about a sixth grade level (Ex. B13E/194, 210, and B1F/44). Although this historic evidence tends to suggest that the claimant's reading skills are below where they should be given her age, the evidence suggests she has greater reading and writing skills than what her testimony would suggest. It also bears mentioning that the claimant's historic school records documented significant issues with truancy, which could have also played a significant factor in her reading, writing, and other academic skills (Ex. B13E).
>
> Although the inconsistent information provided by the claimant may not be the result of a conscious intention to mislead, the inconsistencies suggest that the information provided by the claimant generally may not be entirely reliable.
>
> Collectively, these factors were somewhat inconsistent with the claimant's statements concerning the intensity, persistence, and limiting effects of her symptoms.

(A.R. 30-32).

From this extensive explanation, the Court distills two main reasons for discounting Plaintiff's subjective complaints—her complaints were unsupported by and inconsistent with the evidence. To support this determination, the ALJ provided numerous specific examples from the

record. For example, although Plaintiff alleged totally disabling symptoms, none of Plaintiff's medical providers offered an opinion that she was disabled, nor did the medical records reflect restrictions supporting such a conclusion. True, as Plaintiff points out, the lack of objective medical support cannot be the sole reason to discount subjective testimony. (ECF No. 19, p. 31) However, it was still a relevant factor, among others, to discount the subjective complaints here. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.").

As for inconsistency, the ALJ noted that Plaintiff's treatment for her physical symptoms was conservative, *e.g.*, she took medication. (A.R. 931 (noting that rest and medication was recommended for low back pain)). *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."). And as noted above in connection with Plaintiff's first issue, the ALJ determined that Plaintiff's inability to maintain attention and concentration and carry out simple job instructions was inconsistent with her role in managing her children's education. Moreover, the ALJ noted inconsistencies between Plaintiff's subjective complaints and her testimony. For example, although Plaintiff indicated in her testimony that she was unable to count correct change at a store, a function report reported that she could do so. (*Compare* A.R. 52 (Plaintiff's testimony that she usually just relies on the cashier to give her correct change) *with* A.R. 251 (reporting that Plaintiff can count change)).[6]

Accordingly, the Court concludes that the ALJ provided clear and convincing reasons, supported by substantial evidence, for not giving full weight to Plaintiff's subjective complaints.

\\\

---

[6] Plaintiff challenges other portions of the ALJ's rationale, such as arguing that the ALJ improperly interpreted raw medical data to downplay the severity of Plaintiff's symptoms. (*See* ECF No. 19, p. 33). However, as the reasons discussed above are sufficient to affirm the ALJ's decision, the Court need not consider every reason cited by the ALJ to discount Plaintiff's subjective symptoms.

## II. CONCLUSION AND ORDER

Based on the above reasons, the decision of the Commissioner of Social Security is affirmed. And the Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated: **May 16, 2022**  /s/ Erica P. Grosjean
UNITED STATES MAGISTRATE JUDGE